**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **NAVIGATORS SPECIALTY** | **:** | |
| **INSURANCE COMPANY,** | **:** | |
| | **:** | **Case No. 2:14-CV-1676** |
| **Plaintiff,** | **:** | |
| | **:** | **JUDGE ALGENON L. MARBLEY** |
| **v.** | **:** | |
| | **:** | **Magistrate Judge Kemp** |
| | **:** | |
| **GUILD ASSOCIATES, INC.,** *et al*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**OPINION & ORDER**

This matter is before the Court on the Motion for Summary Judgment of Plaintiff

Navigators Specialty Insurance Company ("Navigators").  (Doc. 51.)  For the reasons below, the

Court **GRANTS in part** and **DENIES in part** Navigators' Motion.

## I.     BACKGROUND

This case is about the scope of a Commercial General Liability insurance policy that

Guild Associates, Inc. ("Guild") purchased from Navigators.  Commercial General Liability

policies in Ohio generally operate to protect businesses from unanticipated damage to third

parties caused by the business, not from the "normal, frequent, or predictable consequences of

doing business[.]"  *Westfield Ins. Co. v. Custom Agri Sys., Inc*., 2012-Ohio-4712, ¶ 10 (internal

quotations omitted).  Damages to the insured's own work would fall into the uninsured category

of "business risks."  *Id.* at ¶ 13.  Damages "derived from the work the insured performed," by

contrast, are generally covered by Commercial General Liability policies.  *Id.*  Navigators brings

this declaratory judgment action, and its present motion for summary judgment, asserting that its

insurance policy does not cover damages and other relief that a nonparty to this action seeks from Guild.

## A. Factual Background

Guild purchased from Navigators an insurance policy, Commercial General Liability policy number GA13CGL110271IC ("CGL Policy" or "Policy"), which insured Guild against certain occurrences during the period dating from May 22, 2013 to May 22, 2014.  (CGL at 3 of 57, 13 of 57, and 15 of 57.)[1]  The Policy requires Navigators to indemnify and to pay the defense costs of Guild if it is sued for "damages because of 'bodily injury' or 'property damage'" caused by "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (CGL at 1, 16.)[2]

On October 7, 2003, Guild sued a third-party to this action, Bio-Energy (Washington) LLC ("BEW")in the Franklin County Court of Common Pleas, case number 13 CV 011058. (Doc. 1 at ¶ 6; Doc. 22 at ¶ 1.)  BEW removed the case to the United States District Court for the Southern District of Ohio, Eastern Division, S.D. Ohio case number 2:13-cv-1041 (Watson, J.), and on September 19, 2014 filed an answer and counterclaims against Guild  (the "counterclaims" in the "Federal Case").  (Doc. 1 at ¶ 7; Doc. 22 at ¶ 1.)  Both Guild and BEW filed motions for partial summary judgment in the Federal Case, which the Court has not yet decided.

---

[1] The CGL Policy is attached to Navigators' Complaint as Exhibit D, Navigators' Motion for Summary Judgment as Exhibit 1, and Guild's Opposition to Navigators' Motion for Summary Judgment as Exhibit B.  The Court will cite to the Policy as "CGL".

[2] The Policy does not contain uniform page numbers; several pages precede and succeed the 17-page "Commercial General Liability Form[,]" numbered "Page X of 17[,]" around which this dispute is centered.  Unless otherwise indicated, page citations will refer to the 17-page Commercial General Liability Form.

BEW also filed a complaint for declaratory judgment and specific performance against Guild in the Superior Court of King County in the state of Washington, case number 13-2-36227-9 SEA (the "Washington State Case").  (Doc. 1 at ¶ 8; Doc. 22 at ¶ 1.)

The parties do not dispute that the allegations against Guild in the Federal Case and the Washington State Case, if true, occurred during the period in which Guild was covered by the CGL Policy.  Rather, Navigators asserts that it is not obligated to indemnify or defend Guild in the lawsuits because the counterclaims in the Federal Case and the claims in the Washington State case allege conduct that (a) does not qualify for coverage, and (b) falls within policy exclusions.

### 1.  The Federal Case

In the Federal case, BEW brings three counterclaims.

#### a.  First Counterclaim for Breach of Contract and Fraud in the Inducement

BEW's first claim seeks damages for breach of contract and fraud in the inducement. According to the counterclaims, Guild accepted a 2007 purchase order ("Purchase Order") to supply a nitrogen removal unit ("NRU") to BEW's purification plant at the Cedar Hills landfill in Maple Valley, Washington.  (Fed. CC at ¶ 5.)[3]  The NRU, integral to the tenth and final step of the plant's landfill gas purification, removes excess nitrogen and carbon dioxide principally through the use of absorbents contained in four vessels.  (*Id.* at ¶ 6.)  The gas hits the NRU at high speed; a diffuser basket installed at the top of each vessel slows and spreads the gas evenly through the absorbent material below the basket.  (*Id.* at ¶ 8.)  Inside the four vessels, foam pads and bags of dense stone hold the absorbent material in place.  (*Id.*)

---

[3] The counterclaims are attached  to various filings in this case.  (*See* Docs. 1-2, 51-3, 53-1.)  The Court will cite to them as "Fed. CC".

On or about October 1, 2010, the NRU experienced a major failure when the metal bottom of the diffuser basket within NRU vessel 32 ("V-32" or "V32") was suddenly torn away, allowing the incoming, high-speed gas to directly impact and destroy the absorbent media stored below the basket.  (*Id.* at ¶ 9.)  BEW alleges that the absorbent "dust" created by the incident "overwhelmed the capacity of the filter system, clogged the third stage compressor oil filters, and required that the system be shut down on October 5, 2010, and repairs undertaken."  (*Id.*)  Shortly thereafter, Guild provided replacement media at no charge to BEW.  (*Id.*)

On or about March 29, 2011, the purification system was shut down after automated monitoring systems registered operating conditions outside of normal limits.  (*Id.* at ¶ 11.)  After an investigation, BEW's experts concluded that the October 2010 accident had damaged not just V-32, but also the other three vessels because the absorbent dust from V-32 "had fluidized, carried over, and become interspersed in the absorbent beds of the other three NRU vessels, and then abraded the remaining undamaged absorbent material in all four vessels over time until most of it also turned to 'dust.'"  (*Id.*)

Unlike in October 2010, Guild did not provide free replacement absorbent media to BEW following the March 2011 shutdown.  (*Id.* at ¶ 13.)  Instead, Guild required BEW to make major modifications to its entire purification process before Guild would even consider selling (rather than providing for free) replacement absorbent media to BEW.  (*Id.*)  Guild persisted in this demand even after BEW retained an expert who opined that the modifications were unnecessary.  (*Id.* at ¶ 14.)  Since BEW had no viable alternatives to Guild's NRU, BEW was forced to enter into a contract (the 2011 Repair Agreement) to implement Guild's required plant modifications—modifications which cost BEW almost $3 million in capital expenditures.  (*Id.* at ¶¶ 12, 15.)  In addition, BEW alleges, the forced modifications rendered the purification plant

4

less efficient.  (*Id.* at ¶16.)  BEW extrapolated that these forced changes will cause it to suffer a total loss of approximately $12,381,000.  (*Id.*)

BEW alleges that Guild knew or should have known: (a) that it had no scientific basis to require the changes to the plant as a condition to its willingness to supply replacement absorbent; (b) that Guild had an existing contractual obligation, contained in Section 22 of the Purchase Order, to re-supply BEW with absorbent media; and (c) that its plant modification demands would cause BEW huge losses in revenue due to losses in the plant's efficiency.  (*Id.* at ¶¶ 17-19.)

Due to the above tortious conduct and breach of contract, BEW seeks damages in the amount of the approximately $3 million in capital expenditures and $12,380,000 in lost revenue. (*Id.* at ¶ 20.)

### b.  *Second Counterclaim for Breach of Contract*

Count II targets Guild's refusal to provide BEW with free replacement absorbent media, which allegedly damaged BEW to the extent of the cost of the replacement media—$3 million. (*Id.* at ¶¶ 21, 25.)  Because the proximate cause of BEW's loss of the absorbent media was "the October 2010 failure of the diffuser basket in vessel 32 supplied by Guild[,]" which was in turn caused by "the negligence of Guild in furnishing services and products under the…Purchase Order[,]" BEW alleges that Guild should have provided free replacement media under the indemnification provision of the Purchase Order.  (*Id.* at ¶¶ 21-23.)

### c.  *Third Counterclaim for Breach of Contract*

The 2011 Repair Agreement absolves BEW of obligations to pay for much of the replacement media if the NRU fails to meet certain performance guarantees.  (*Id.* at ¶ 27.)  BEW alleges that Guild was supposed to provide performance curves against which the plant's performance would be measured, yet Guild's provided performance curves were late and did not

5

account for all actual operating conditions.  (*Id.* at ¶¶ 28, 31, 34.)  Nonetheless, BEW compared the plant's performance against Guild's faulty performance curves and found a 2.5% loss in efficiency when compared with the Repair Agreement's performance guarantees.  (*Id.* at ¶ 34.)  BEW seeks damages in excess of $4 million to account for this lost efficiency.  (*Id.* at ¶ 35.)

## 2.  The Washington State Case

On October 21, 2013, BEW sued Guild in Washington State for declaratory judgment and specific performance.[4]

Under Section 22 of the Purchase Order, Guild "warrants that items purchased under this Order, including sub-assemblies and spare parts shall be available to [BEW] and its customers during the operational life of the items purchased or ten (10) years after the date of final shipment under this Order, whichever is later."  (Wash. Compl. ¶ 2.3.)  If Guild "discontinues the manufacture of any such items during the covered period, it will provide the drawings and specifications to [BEW] and its customers pursuant to a royalty fee license that will allow [BEW] or its customers to manufacture or procure such items from others."  (*Id.* at ¶ 2.4.)

BEW alleges that it submitted a purchase order under the above provisions, which Guild has simply refused to honor.  (*Id.* at ¶¶ 2.5-2.8.)  BEW seeks a declaratory judgment that:

(a)     Guild must "provide the replacement diffuser baskets, or, alternatively, the detailed specifications and drawings for such baskets if [Guild] no longer manufactures the baskets" (*id.* at ¶ 3.3); and

(b)     Guild is bound by Section 22 of the Purchase Order, and that Guild "has an ongoing obligation to provide NRU replacement components to [BEW] at reasonable prices comparable to those paid by [Guild]'s other customers, and pursuant to normal commercial delivery terms for the longer of (i) the operational life of the items purchased or (ii) ten (10) years after the date of final shipment under the original NRU under the…Purchase Order, whichever is later.  (*Id.* at ¶ 3.4.)

---

[4] The Washington State complaint is also attached to various filings in this case.  (*See* Docs. 1-3, 51-4.)  The Court will cite to it as "Wash. Compl".

BEW also seeks an order requiring specific performance, namely, for Guild to supply BEW with two replacement diffuser baskets pursuant to the above contractual obligations.  (*Id.* at ¶ 4.1.)

## B.  Procedural History

Navigators filed a complaint on September 19, 2014, seeking declaratory judgments that (1) BEW's counterclaims in the underlying Federal Case do not state an insurance policy "occurrence" under Navigators' CGL policy with Guild, and thus do not trigger coverage (Compl., Doc. 1, at ¶¶ 27-36); (2) even if BEW's counterclaims in the Federal Case qualified as insurance policy "occurrences," exclusions apply to bar or limit coverage under the CGL policy (*id.* at ¶¶ 37-47); (3) BEW's claims in the Washington State case do not trigger coverage under the CGL policy (*id.* at ¶¶ 48-54); and (4) consequently, Navigators owes Guild  no duty to defend against BEW in either the Federal Case or the Washington State Case.  (*Id.* at ¶¶ 55-60.) Navigators filed a motion for summary judgment (Doc. 51), which was opposed by both Guild (Doc. 53) and BEW.  (Doc. 52.)  The motion is fully briefed and is ripe for review.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law."  *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993).  The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment.  *See Mitchell v. Toledo Hospital,* 964 F.2d

577, 582 (6th Cir. 1992).  Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52).  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor.  *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party.  *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III.    ANALYSIS

Navigators argues that it is not obligated to indemnify or defend Guild in either the Federal Case or the Washington State Case because these cases do not state claims for "property damage" caused by an "occurrence" under the CGL Policy.  Should the Court find the counterclaims to allege "property damage" caused by an "occurrence," Navigators argues that four Policy exclusions serve to bar coverage.  Because none of BEW's claims against Guild is covered by the CGL Policy, Navigators argues, Navigators owes Guild no duty to defend against those claims.

CGL coverage questions are generally questions of law for the Court to decide.  *Stafford v. Jewelers Mut. Ins. Co*., 554 Fed. Appx. 360, 373 (6th Cir. 2014).  Whether an "occurrence"

caused alleged "property damage" under a CGL policy, however, may also present issues of fact for the jury. *See IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, 572 Fed.Appx. 402, 408 (6th Cir. 2014). Under Ohio law, the Court analyzes insurance contracts the same as it would any other contract. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). The Court's role in contract interpretation "is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 133 Ohio St.3d 476, 478 (2012) (citation omitted). Where a policy term is clearly defined, the Court will give it the plain meaning provided by the contract. *Columbia Cas. Co. v. City of St. Clairsville, OH*, no. 05-cv-898, 2007 WL 756706, at *13 (S.D. Ohio 2007). Undefined terms are to be given their "plain and ordinary meaning." *Ambrose v. State Farm Fire & Cas.*, 592 N.E.2d 868, 870 (Ohio App. 9 Dist., 1990). In determining the plain meaning of a contractual term, the Court will read the contract as a whole and, to the extent possible, give each word its appropriate meaning. *Hartzell Industries, Inc. v. Federal Ins. Co.*, 168 F.Supp.2d 789, 793 (S.D.Ohio 2001) (citation omitted). An ambiguous policy is to be liberally construed in favor of the insured. *Id.* (citation omitted).

## A. BEW's Counterclaims in the Federal Case

Navigators argues that BEW's counterclaims do not qualify Guild for coverage under the CGL Policy. The Policy provides for Navigators to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage'" caused by an "occurrence" under the Policy. (CGL at 1.) "Property damage" under the Policy means "[p]hysical injury to tangible property, including all resulting loss of use of that property[,]" as well as the "[l]oss of use of tangible property that is not physically injured." (CGL at 16-17.) An "occurrence", in turn, "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 16.) The Ohio Supreme Court has defined "accidental" to mean "unexpected, as well as unintended." *Hybud*, 64 Ohio St.3d at 666.

9

In Ohio, proximate cause is important to an analysis of "accident" or "occurrence" in insurance contracts. *Manor Care, Inc. v. First Specialty Ins. Corp.*, No. 3:03CV7186, 2006 WL 2010782, at *4 (N.D. Ohio July 17, 2006) (citations omitted).

### 1. Material Fact Questions Remain Regarding Whether the CGL Policy Covers BEW's First Counterclaim for Breach of Contract and Fraud in the Inducement

BEW's first counterclaim alleges that Guild forced BEW to modify its plant unnecessarily in the wake of the October 2010 accident, causing damages in the form of unnecessary capital expenditures and a drop in the plant's efficiency. (Fed. CC ¶¶ 13, 15, 16, 19.)  Navigators argues that claims for breach of contract and fraudulent inducement do not, as a matter of law, state a policy "occurrence" because they are claims for intentional, rather than accidental, conduct. (Doc. 51 at 8-14.)  By contrast, Guild argues that each of BEW's claims stems from damage to BEW's purification plant that is allegedly traceable to the October 1, 2010 NRU failure. (Doc. 53 at 5-7.)  The labels placed on BEW's claims, according to Guild, are irrelevant to the determination of defense and indemnity under the Policy. (*Id.*)

As even Navigators' cited cases above bear out,[5] Guild is correct that the labels placed on BEW's claims do not determine coverage and that the Court must look at the underlying allegations. *Westfield Ins. Co. v. Custom Agri*, 2012-Ohio-4712, ¶ 10 ("a CGL policy may

---

[5] Navigators fails to cite a single case that applies the blanket proposition that breaches of contract and fraudulent conveyance claims are not policy occurrences. (Doc. 51 at 10; Doc. 55 at 9.)  *Monarch Const. Co. v. Great Am. Ins. Co.*, Case No. C960645, 1997 WL 346097, at *3 (Ohio App. 1 Dist. 1997) (case turned on whether the allegations of delay causing additional expenses stated claims for property damage); *Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶¶ 36, 49 (Ohio, 2003) (seller omitting information about property damage did not state claims for property damage); *Stevens Painton Corp. v. Aetna Casualty and Surety Co.*, Case No. 68464, 1995 WL 572035, at *2 (Ohio App. 8 Dist. 1995) (alleged failure to add an additional insured did not constitute property damage); *Auto Owners Mut. Ins. Co. v. Kendrick*, 2009-Ohio-2169, ¶¶ 3, 44 (Ohio App. 5 Dist. 2009) (damages alleged are defects in construction, not consequential damages stemming from such defects); *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 583 (6th Cir. 2001) (same); *Cleveland Freightliner, Inc. v. Federated Service Ins. Co.*, Case No. 1:10 cv 01852, 2011 WL 2461862, at *4 (N.D. Ohio 2011) (link to property damage, not claim label of misrepresentation, determined coverage issue); *Westfield Ins. Companies v. D.C. Builders, Inc.*, 2004-Ohio-742, ¶¶ 2, 36 (Ohio App. 8 Dist. 2004) (same).

provide coverage for claims arising out of tort, breaches of contract, and statutory liabilities as long as the requisite accidental occurrence and property damage are present") (internal quotation omitted). The question for the Court, then, is whether Guild forcing BEW to modify its plant in the wake of the October 2010 accident, causing lost efficiency and unnecessary capital expenditures, states a claim for "property damage" arising out of an "occurrence" under the Policy. The parties disagree about whether the claims arise from the underlying V32 accident or from Guild's subsequent demand that BEW make plant modifications.

Guild argues that it would not have made such a demand if there had been no accident in October 2010. (Doc. 53 at 5-7.) Since the parties do not dispute that the October 2010 accident caused property damage, a jury could reasonably find that the October 2010 accident caused BEW's alleged damages because the October 2010 accident (occurrence) and dust-related damage (property damage) caused Guild to make the demand, which caused BEW's alleged damages (capital expenditures and lost revenue).

Guild analogizes this case to *Cincinnati Ins. Cos. v. Motorists Mut. Ins. Co.*, 2014-Ohio-3864 (Ohio App. 9 Dist. 2014). There, G&S installed faulty wiring in a home. *Id.* at ¶ 2. Motorists and Cincinnati each provided CGL insurance policies to G&S with similar provisions to those in the Policy at issue in this case. *Id.* at ¶¶ 2, 12. Years later, the home was damaged by a fire caused by the faulty wiring. *Id.* at ¶ 3. The homeowner's insurer, Nationwide, paid the damages, and sued Motorists and Cincinnati for contribution, stating claims for negligence, breach of contract, and/or breach of warranty on the part of G&S. *Id.* at ¶¶ 3, 11. The court found the CGL policies to cover the claim because Nationwide sought consequential damages

caused by the fire rather than direct damages related to G&S's allegedly defective work.[6]  The chain of causation between occurrence and property damage in *Cincinnati Ins.* is short: the faulty wiring caused the fire, which damaged the home.  Guild's argument traces a more circuitous chain of causation: that the accident caused damages which caused Guild to make the demand which caused damages.

Navigators focuses on the intentional nature of the demand for capital expenditures, drawing support from BEW's arguments in opposition to Guild's partial motion for summary judgment ("BEW's Opposition").  (Doc. 55 at 5-9.)  According to Navigators, the intentional decision to force modifications caused the plant to be inefficient and lose revenue.  (Doc. 55 at 6, 8, citing BEW's Opposition at 2, 19.)  These allegations, according to Navigators, do not constitute "property damage" arising from an "occurrence."

While BEW's explication of its claims supports Navigators' position,[7] the Court finds that material facts remain regarding the cause of BEW's damages.  *See also Cleveland Freightliner, Inc. v. Federated Service Ins. Co.*, No. 1:10CV01852, 2011 WL 2461862, at *4 (N.D. Ohio June 17, 2011) ("An insurance provider's duty to defend or indemnify is limited to the allegations in the complaint against the insured party.").  The causation chain in this case is longer than that of *Cincinnati Ins. Cos. v. Motorists Mut. Ins. Co.*,[8] but the Court must draw all reasonable inferences in favor of Guild.  *Sierra Brokerage Servs., Inc.*, 712 F.3d at 327.  This case does not compel the conclusion that Guild's decision to require costly plant modifications

---

[6] The Ohio Supreme Court has found damages related to an insured's allegedly defective work not to constitute "property damage" caused by an "occurrence" under a CGL policy.  *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 2012-Ohio-4712 at ¶19.

[7] It is clear, however, that BEW has its own purposes in trying to distance its claims from the October 2010 diffuser basket failure.

[8] *See also Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶ 35 (Ohio, 2003) (no insurance coverage because home sellers' omissions regarding damage to homes were not sufficiently causally related to the damage).

breaks the causal chain between the October 2010 accident and BEW's alleged damages. Indeed, a "confluence of [] events" can, under the right circumstances, provide the "occurrence" triggering a duty to defend and indemnify. *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, 572 F. App'x 402, 409 (6th Cir. 2014). A reasonable juror could find that the October accident caused Guild to demand inefficient plant modifications, which caused BEW's lost revenue. In insurance contract vernacular, because the October accident is an occurrence that caused property damage, damage stemming from the October accident would be covered by the CGL. Navigators' motion for summary judgment is therefore **DENIED** on Navigators' duty to indemnify Guild for damages arising from BEW's first counterclaim.

### 2. Material Fact Questions Remain Regarding Whether the CGL Policy Covers BEW's Second Counterclaim for Breach of Contract

In its second counterclaim, BEW alleges that after it lost the absorbent media due to the October 2010 diffuser basket failure, Guild should have provided free replacement media under the indemnification provision of the Purchase Order. Instead, Guild charged $3 million ($700,000 of which BEW already paid), which BEW claims as damages. BEW seeks its $700,000 back, as well as a declaration that it does not owe the remaining $2.3 million. (*See supra*, sec. (I)(A)(1)(b).)

BEW's second counterclaim presents the same causation question as its first: did Guild's decision to charge BEW for the replacement media break the causal chain from the October 2010 accident to BEW's alleged damages? Guild would not have had to charge BEW for replacement media had the October 2010 accident not happened, yet Guild's choice unquestionably lengthens the causal chain. Because the answer to this question is material, *i.e.*, it is likely to affect the outcome of this issue, the Court **DENIES** Navigators' motion for summary judgment on policy coverage for damages arising from BEW's second counterclaim.

13

### 3.  Material Fact Questions Remain Regarding Whether the CGL Policy Covers BEW's Third Counterclaim for Breach of Contract

BEW's third counterclaim seeks more than $4 million to account for the lost revenue stemming from inefficient replacement media, in alleged breach of the 2011 Repair Agreement. (*See supra*, sec. (I)(A)(1)(c).)  Navigators argues that this claim does not state a policy "occurrence," and also that it states a claim for mere economic loss, which "does not constitute 'property damage' under Ohio law."  (Doc. 51 at 12-14.)  In its Reply brief, Navigators expands its economic loss argument to encompass all of BEW's counterclaims.  (Doc. 55 at 9.)

While pure economic losses generally do not constitute property damages under insurance policies, *see Anders*, 2003-Ohio-3048, ¶ 36, they may be insurable under the "loss of use of tangible property" prong of property damage.  *IMG Worldwide*, 572 Fed. Appx. at 409 (citing *Hartzell*, 168 F. Supp. 2d at 796.)  Guild analogizes this case to *Hartzell*. 168 F.Supp.2d 789.  (Doc. 53 at 10-12.)  In *Hartzell*, the insured's fan disintegrated, causing a third-party boiler house's cooling function to be shut down.  *Id.* at 791.  The boiler house became hot, and therefore less productive.  This loss of productivity constituted a "partial loss of tangible property that is not physically injured," and thus "property damage," under the insurance policy. *Id.* at 795-96.  Here, Guild argues, the 2010 accident caused a decrease in BEW's productivity, which, like in *Hartzell*, constituted "property damage" under the Policy.  (Doc. 53 at 12.)

The Court is again faced with a causation question.  Did the October 2010 accident cause the inefficiency of the replacement media supplied by Guild?  If so, then BEW's third counterclaim likely arises from "property damage" caused by an "occurrence" under the Policy. This question again raises an issue of material fact sufficient to preclude summary judgment. The Court **DENIES** Navigators' motion for summary judgment on policy coverage for damages arising from BEW's third counterclaim.

14

**B.  Exclusions**

Navigators contends that even if the Court finds that BEW's counterclaims fall within the policy, one or more policy exclusions serve to bar coverage.  These applicable exclusions, according to Navigators, relate to: (1) Expected or Intended Injury; (2) Impaired Property; (3) "Your Work" and "Your Product"; and (4) punitive damages.  Ohio law requires the Court to construe insurance policy exclusions narrowly, such that a claim "not clearly excluded from the operation of the contract is included in the operation thereof."  *Mosser Const., Inc. v. The Travelers Indem. Co.*, 430 Fed.Appx. 417, 421 (6th Cir. 2011) (internal quotation omitted).  To prevail on summary judgment, Navigators must "show that an exclusion specifically applies." *Id.*

**1.  Material Fact Questions Remain Regarding the Expected or Intended Injury Exclusion as Applied to BEW's First Counterclaim**

The Navigators Policy excludes coverage for "property damage" that is "expected or intended from the standpoint of the insured."  (CGL at 1.)  Navigators argues that BEW's First Counterclaim for fraudulent inducement, which is "predicated" on damage that Guild "expected or intended," thus falls within this exclusion.  (Doc. 51 at 14.)  Intentional actions, like forcing plant modifications, according to Navigators, fall into the CGL's "expected or intended injury" exclusion.  (Doc. 55 at 11.)  Guild responds that the damage was caused not by an intentional action but rather by an unintentional accident; Guild did not expect or intend its basket to fail, and not one of BEW's allegations says otherwise.  (Doc. 53 at 8.)

As in Section (III)(A)(1), *supra*, the question is whether the October 2010 accident, or Guild's subsequent intentional actions, caused BEW's alleged damages.  For the same reasons stated *supra* in Section (III)(A)(1), the Court finds this question to state a genuine issue of material fact sufficient to preclude summary judgment for Navigators.

### 2. Material Fact Questions Remain Regarding the Impaired Property Exclusion as Applied to BEW's First Counterclaim

Navigators argues, in response to BEW's first counterclaim, that the "capital expenditures needed to get [BEW's] plant working properly after the product failure…would be excluded from coverage by virtue of the Navigators Policy's 'impaired property' exclusion." (Doc. 55 at 12.)

Exclusion "m" excludes from coverage "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (CGL at 5.)  This exclusion also contains an exception.  Exclusion "m" does *not* apply to "the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."  (*Id.*)

Because the damage to the V-32 basket occurred suddenly and accidentally, Guild argues, the exception to exclusion "m" applies.  (Doc. 53 at 8.)  Navigators argued, but later retracted its statement, that the exception to exclusion "m" did not apply because the alleged damage to the V-32 diffuser basket occurred "over time" rather than 'suddenly or accidentally." (Doc. 51 at 15; Doc. 56 at 2.)  Navigators' reply briefs otherwise branch into two separate directions.

In its brief replying to BEW's Opposition to Navigators' Motion for Summary Judgment, Navigators directed the Court to its other arguments concerning coverage and exclusions should the Court find that damage to the V-32 diffuser basket occurred "over time" rather than "suddenly or accidentally."  (Doc. 54 at 4-5.)  Through its retraction of its "over time" argument and its failure to raise any further arguments in support of the application of the impaired

property exclusion, Navigators implicitly acknowledged that the exception to the impaired property exclusion would apply in this case.  (Doc. 54 at 4-5; Doc. 56 at 2.)

In its brief replying to *Guild*'s Opposition to Navigators' Motion for Summary Judgment, however, Navigators argues that BEW's counterclaims are based on intentional conduct and not the sudden and accidental failure of the diffuser basket.  (Doc. 55 at 13.)

For the same reasons stated in Sections (III)(A)(1) through (3) and Section (III)(B)(I), the Court finds that a genuine material question of fact remains as to whether the damages arose out of "sudden and sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

### 3. Navigators has Failed to Meet its Burden to Show Application of the "Your Work" and "Your Product" Exclusions

"Damage to Your Product" policy exclusion (k) precludes coverage for "'Property damage' to 'your product' arising out of it or any part of it."  (CGL at 4.)  "Damage to Your Work" Policy exclusion (l) excludes from coverage "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  (*Id.*)

The Policy defines "Your product" to mean, in relevant part, "Any goods or products…manufactured, sold, handled, distributed or disposed of by…You[.]"  (CGL at 17.) "Your work" means "Work or operations performed by you or on your behalf[,]" and includes "The providing of or failure to provide warnings or instructions."  (*Id.*)  The "Products-completed operations hazard" "includes all … 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." (*Id*. at 16.)

Navigators appears to argue that all three of BEW's counterclaims are barred by the "your work" and "your product" exclusions, although Navigators does not address any counterclaim specifically, and its case citations are limited to the enforceability of such clauses. (Doc. 51 at 17-18; Doc. 55 at 17.)  To win summary judgment, Navigators must show that these exclusions "specifically appl[y]." *Mosser*, 430 Fed. Appx. at 421.

In its motion, Navigators contends summarily that the Policy exclusions for "your product" and "your work" apply, "to the extent that BEW claims property damage resulting from the NRU that Guild sold to BEW." (Doc. 51 at 18.)  Such a broad reading of the "your property" and "your work" exclusions, to the extent that it would preclude coverage for damage to third parties, would eviscerate insurance coverage entirely. *Hartzell*, 168 F.Supp.2d at 798.  Indeed, businesses purchase CGL policies for the purpose of obtaining coverage for damage to third parties derived from the work the insured performed. *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 2012-Ohio-4712, ¶ 10 (internal quotations omitted).  The exclusions preclude "property damage *to the insured's product*, not "damage to the *property of a third-party . . . arising out of the insured's product.*" *Hartzell*, 168 F.Supp.2d at 798.

Guild concedes that the Policy does not cover damage to its diffuser baskets. (Doc. 53 at 13.)  Instead, Guild seeks indemnification and defense relating to "allegations that BEW sustained … damage as a result of negligent furnishing of the NRU which allegedly caused consequential damages to the entire purification plant." (*Id.*)[9]

---

[9] Inexplicably, Guild contends that the damages alleged in BEW's counterclaim are "covered" under the products-completed operations hazard. (Doc. 53 at 13-14.)  Guild also makes reference to the products-completed operations hazard exception to Exclusion (j) for "Damage to Property."  These arguments are off-point.  The products-completed operations hazard is simply a defined term in the CGL Policy; it does not grant any coverage. (CGL at 1, 16.)  In addition, Navigators makes no claim that Exclusion (j) bars coverage in this case, (Doc. 55 at 15); in any event, Guild cannot manufacture coverage out of the exception to a policy exclusion.

In reply, Navigators argues in the negative, suggesting that Guild's response to its motion admits the application of these exclusions by: (a) failing to address Navigators' "contention" regarding the exclusions (Doc. 55 at 15); and (b) arguing the applicability of the products-completed operations hazard, which contains an element that "the alleged damages arose out of 'your product' or 'your work.'"  (Doc. 55 at 15-17, citing Doc. 53 at 14; CGL at 4, 16.)

In neither its motion nor its reply does Navigators point to specific underlying facts in applying the "your work" or "your product" exclusions, and in neither motion nor reply does Navigators apply the exclusions to each counterclaim.  (Doc. 51 at 17-18; Doc. 55 at 14-17.) The Court need not conjure evidence for Navigators; rather, the Court "is entitled to rely . . . upon only those portions of the [record] specifically called to its attention by the parties." *Hartzell*, 168 F. Supp. at 793.  As such, Navigators has failed to discharge its burden to show that the "your work" or "your product" exclusions "specifically appl[y]" to each counterclaim such that the Court should grant its motion for summary judgment.  *Mosser Const., Inc.*, 430 Fed. Appx. at 421.

### 4.  The CGL Policy Does Not Cover Punitive Damages

Navigators argues, and Guild admits, that the Navigators policy does not cover punitive damages and that Ohio law precludes insurers from offering policies that cover punitive damages.  (Doc. 22 at ¶ 1.)

Navigators' motion for summary judgment on the issue of coverage for punitive damages is **GRANTED**.  Navigators' motion is **DENIED** as to coverage for the damages asserted by BEW's remaining counterclaims.

### C.  Guild has Waived Opposition to Navigators' Motion for Summary Judgment as Applied to BEW's Claims in the Washington State Case

The CGL Policy requires Navigators to "pay those sums that the insured becomes legally obligated to pay as damages…." (CGL at 1.)  BEW sued Guild in Washington State for declaratory judgment and for specific performance, seeking to force Guild to sell it two replacement diffuser baskets, or the drawings and specifications needed for BEW to create its own.  (*See supra*, sec. (I)(A)(2).)

Navigators argues that these claims do not trigger insurance coverage because they state claims not for "damages," as provided by the insurance contract, but for equitable relief.  (Doc. 51 at 19-21.)  Guild does not make *any* argument in response to Navigators' motion on the issue of BEW's claims in the Washington State Case.  A party waives opposition to an argument by failing to address it in her responsive brief.  *See Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D.Ohio 2005); *Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013).  The Court therefore **GRANTS** Navigators' motion for summary judgment on indemnification of BEW's claims in the Washington State Case.

### D.  Navigators Owes Guild a Defense in the Federal Case, But Not the Washington State Case

The Policy affords Navigators "the right and duty to defend the insured against any 'suit' seeking [covered] damages."  (CGL at 1.)  Whether an insurer has the duty to defend an action against an insured is determined by "the scope of the allegations in the complaint."  *Motorists Mut. Ins. Co. v. Trainor*, 294 N.E.2d 874, 875 (Ohio 1973).  If the "duty to defend is not apparent from the pleadings…but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim."  *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio, 1984).  The insurer may

only avoid its duty to defend "if there is *no* possibility of coverage based on the allegations in the complaint[.]" *National Engineering & Contracting Co. v. U.S. Fidelity & Guar. Co.*, 2004 - Ohio- 2503, ¶ 15, (Ohio App. 10 Dist., 2004).  The insurer owes no defense to the insured "if all the claims are clearly and indisputably outside the contracted coverage[.]" *Cincinnati Ins. Cos. v. Motorists Mut. Ins. Co*., 2014-Ohio-3864, ¶ 10 (Ohio App. 9 Dist., 2014).  The duty to defend is broader than the duty to indemnify; an insurer may have the duty to defend even where it does not have a duty to indemnify.  *National Engineering*, 2004-Ohio-2503 at ¶ 15.  If an insurer "must defend one claim within a complaint, it must defend the insured on all other claims within the complaint even if they bear no relation to the policy coverage."  *Mesa Underwriters Specialty Insurance Co. v. Myers*, Case No. 3:14cv2201, 2016 WL 4367079, at *5 (N.D. Ohio August 16, 2016) (internal quotation omitted).  An insurer's duty to defend "is determined at the time the underlying action is brought."  *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, 572 Fed.Appx. 402, 410 (6th Cir. 2014) (citation omitted).

Because the Policy arguably covers BEW's counterclaims, the Court **DENIES** Navigators' motion for summary judgment as it relates to the defense of BEW's counterclaims.

Because Guild has failed to make any argument regarding defense of the Washington State Case, (*see supra*, sec. (III)(C)), and because the Court need not develop such an argument for Guild, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), the Court **GRANTS** Navigators' motion for summary judgment as it relates to the defense of BEW's claims in the Washington State Case.

## IV.    CONCLUSION

Based on the foregoing, the Court:

> **DENIES** Navigators' motion for summary judgment as it relates to indemnifying
>
> Guild for damages arising from BEW's counterclaims, except that the Court
>
> **GRANTS** Navigators' motion for summary judgment regarding indemnification
>
> for any punitive damages arising from the counterclaims;
>
> **DENIES** Navigators' motion for summary judgment as it relates to Navigators'
>
> duty to defend Guild against BEW's counterclaims; and
>
> **GRANTS** Navigators' motion for summary judgment as it relates to Navigators'
>
> duty to indemnify or defend Guild against BEW's Washington State claims.

**IT IS SO ORDERED.**

                                                    **___s/ Algenon L. Marbley_____**
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED:  November 28, 2016**